## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ASTRAZENECA AB and ASTRAZENECA PHARMACEUTICALS LP, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. _____ |
| v. | ) ) | |
| ALEMBIC PHARMACEUTICALS LIMITED, ALEMBIC GLOBAL HOLDING SA, ALEMBIC PHARMACEUTICALS, INC., MSN LABORATORIES PVT. LTD., MSN PHARMACEUTICALS INC., ZYDUS PHARMACEUTICALS (USA), INC., AND CADILA HEALTHCARE LTD., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs AstraZeneca AB and AstraZeneca Pharmaceuticals LP (collectively "AstraZeneca" or "Plaintiffs"), by their attorneys, for their Complaint, allege as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code that arises out of the filing by various defendants of Abbreviated New Drug Applications ("ANDA") with the U.S. Food and Drug Administration ("FDA") seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic versions of Plaintiffs' Tagrisso® (osimertinib mesylate) in tablet form in doses of 40 mg and 80 mg, prior to the expiration of U.S. Patent No. 10,183,020 ("the '020 patent").

ME1 32629600v.1

## PARTIES

### Plaintiffs

2.      Plaintiff AstraZeneca AB is a public limited liability company organized under the laws of Sweden, with a principal place of business at Karlebyhus, Astraallén, Södertälje, S-151 85, Sweden.

3.      Plaintiff AstraZeneca Pharmaceuticals LP is a limited partnership organized under the laws of the State of Delaware, with a principal place of business at 1800 Concord Pike, Wilmington, Delaware, 19850.

### Defendants

4.      On information and belief, Defendant Alembic Pharmaceuticals Limited ("APL") is a corporation organized and existing under the laws of India, with a principal place of business at Alembic Road, Vadodara 390003, Gujarat, India.

5.      On information and belief, Defendant Alembic Global Holding SA ("Alembic Global") is a corporation organized and existing under the laws of Switzerland, with a principal place of business at Rue Fritz-Courvoisier 40, 2300 La Chaux-de-Fonds, Switzerland.

6.      On information and belief, Defendant Alembic Pharmaceuticals, Inc. ("Alembic Pharma") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 750 Route 202, Bridgewater, NJ 08807.

7.      On information and belief, Alembic Global is a wholly owned subsidiary of APL, and is controlled and dominated by APL.

8.      On information and belief, Alembic Pharma is a wholly owned subsidiary of Alembic Global, and is controlled and dominated by Alembic Global and APL.  On information and belief, Alembic Pharma is the U.S. agent for APL.

2

ME1 32629600v.1

9.      On information and belief, APL is in the business of, among other things, manufacturing, marketing, distributing, offering for sale, and selling generic drug products.  As a part of this business, on information and belief, APL, acting in concert with Alembic Global and Alembic Pharma, files ANDAs with the FDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic versions of drug products that are covered by United States patents.  On information and belief, as part of these ANDAs, APL, acting in concert with Alembic Global and Alembic Pharma, files certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act  to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic drug products prior to the expiration of United States patents that cover such products.

10.     On information and belief, APL, Alembic Global, and Alembic Pharma acted in concert to prepare and submit ANDA No. 214195 for their 40 mg and 80 mg osimertinib mesylate tablets ("Alembic's ANDA Products"), which was done at the direction of, under the control of, and for the direct benefit of APL.  These three entities are hereafter collectively referred to as "Alembic."

11.     On information and belief, defendant MSN Laboratories Pvt. Ltd. ("MSN Labs") is a private limited company organized and existing under the laws of India, with a principal place of business at MSN House, Plot No: C-24, Industrial Estate, Sanathnagar, Hyderabad - 18 Telangana, India.

12.     On information and belief, defendant MSN Pharmaceuticals Inc. ("MSN Pharma") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 20 Duke Road, Piscataway, New Jersey 08854.

3

13. On information and belief, MSN Pharma is a wholly owned subsidiary of MSN Labs, and is controlled and dominated by MSN Labs. On information and belief, MSN Pharma is the U.S. agent for MSN Labs.

14. On information and belief, MSN Labs is in the business of, among other things, manufacturing, marketing, distributing, offering for sale, and selling generic drug products. As a part of this business, on information and belief, MSN Labs, acting in concert with MSN Pharma, files ANDAs with the FDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic versions of drug products that are covered by United States patents. On information and belief, as part of these ANDAs, MSN Labs, acting in concert with MSN Pharma, files certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic drug products prior to the expiration of United States patents that cover such products.

15. On information and belief, MSN Labs and MSN Pharma acted in concert to prepare and submit ANDA No. 214244 for their 40 mg and 80 mg osimertinib mesylate tablets ("MSN's ANDA Products"), which was done at the direction of, under the control of, and for the direct benefit of MSN Labs. These two entities are hereafter collectively referred to as "MSN."

16. On information and belief, defendant Zydus Pharmaceuticals (USA) Inc. ("Zydus Pharma") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 73 Route 31 North, Pennington, New Jersey 08534.

ME1 32629600v.1

17.     On information and belief, defendant Cadila Healthcare Ltd. ("Cadila") is a corporation organized and existing under the laws of India, with a principal place of business at Zydus Tower, Satellite Cross Roads, Ahmedabad-380 015, Gujarat, India.

18.     On information and belief, Zydus Pharma is a wholly owned subsidiary of Cadila, and is controlled and dominated by Cadila.  On information and belief, Zydus Pharma is the U.S. agent for Cadila.

19.     On information and belief, Zydus Pharma is in the business of, among other things, manufacturing, marketing, distributing, offering for sale, and selling generic drug products.  As a part of this business, on information and belief, Zydus Pharma, acting in concert with Cadila, files ANDAs with the FDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic versions of drug products that are covered by United States patents.  On information and belief, as part of these ANDAs, Zydus Pharma, acting in concert with Cadila, files certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic drug products prior to the expiration of United States patents that cover such products.

20.     On information and belief, Zydus Pharma and Cadila acted in concert to prepare and submit ANDA No. 214263 for their 40 mg and 80 mg osimertinib mesylate tablets ("Zydus's ANDA Products"), which was done at the direction of, under the control of, and for the direct benefit of Cadila.  These two entities are hereafter collectively referred to as "Zydus."

### JURISDICTION

21.     Jurisdiction is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201 and 2202.

ME1 32629600v.1

**Alembic**

22.     This Court has personal jurisdiction over each of APL, Alembic Global, and Alembic Pharma.

23.     APL is subject to personal jurisdiction in Delaware because, among other things, APL, itself and through its wholly owned subsidiaries Alembic Global and Alembic Pharma, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  On information and belief, APL, itself and through its subsidiaries Alembic Global and Alembic Pharma, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, APL is subject to personal jurisdiction in Delaware because, upon information and belief, APL, itself and through its subsidiary Alembic Global, controls and dominates Alembic Pharma and therefore the activities of Alembic Pharma in this jurisdiction are attributed to APL.

24.     Alembic Global is subject to personal jurisdiction in Delaware because, among other things, Alembic Global, itself and together with APL, and through its wholly owned subsidiary Alembic Pharma, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  On information and belief, Alembic Global, itself and together with APL, and through its subsidiary Alembic Pharma, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Alembic Global is subject to personal

ME1 32629600v.1

jurisdiction in Delaware because, upon information and belief, Alembic Global, itself and together with APL, controls and dominates Alembic Pharma and therefore the activities of Alembic Pharma in this jurisdiction are attributed to Alembic Global.

25. Alembic Pharma is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Alembic Pharma is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware.  It therefore has consented to general jurisdiction in Delaware.  In addition, upon information and belief, Alembic Pharma develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

26. On information and belief, Alembic knows and intends that following any approval of Alembic's ANDA No. 214195, Alembic will manufacture and import into the United States Alembic's ANDA Products and directly or indirectly market, sell, and distribute Alembic's ANDA Products throughout the United States, including in Delaware.  On information and belief, following any FDA approval of ANDA No. 214195, Alembic knows and intends that its ANDA Products will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

27. On information and belief, APL, Alembic Global, and Alembic Pharma are agents of each other, and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length, including with

7

respect to the development, regulatory approval, marketing, sale, offer for sale, and distribution of generic pharmaceutical products throughout the United States, including into Delaware, and including with respect to Alembic's ANDA Products at issue. On information and belief, Alembic Pharma, itself and together with Alembic Global, participated in, assisted, and cooperated with APL in the acts complained of herein.

28.    Alembic has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

29.    On information and belief, Alembic, with knowledge of the Hatch-Waxman Act process, directed Alembic's Notice Letter (defined below) to, *inter alia*, AstraZeneca Pharmaceuticals LP, to an address in Delaware, and alleged in Alembic's Notice Letter that the '020 patent will not be infringed by the commercial manufacture, use or sale of Alembic's ANDA Products. On information and belief, Alembic knowingly and deliberately challenged the '020 patent knowing that when it did so it was triggering a forty-five day period for Plaintiffs to bring an action for patent infringement under the Hatch-Waxman Act.

30.    Because AstraZeneca Pharmaceuticals LP is a limited partnership organized in Delaware, it suffers injury and consequences from Alembic's filing of Alembic's ANDA No 214195, challenging the '020 patent in Delaware.

31.    Alembic has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending

8

Alembic's Notice Letter to a Delaware entity, it would be sued in Delaware for patent infringement.

32.   APL, Alembic Global, and Alembic Pharma regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court, *see, e.g.*, *CyDex Pharmaceuticals, Inc. v. Alembic Global Holding SA et al.*, No. 1:19-cv-00956-LPS, D.I. 15 (D. Del. July 29, 2019); *Genentech, Inc. et al. v. Alembic Pharmaceuticals, Ltd., et al.*, No. 1:19-cv-00177-RGA, D.I. 10 (D. Del. March 15, 2019); *H. Lundbeck A/S et al. v. Alembic Pharmaceuticals Limited, et al.*, No. 1:18-cv-00113-LPS, D.I. 17 (D. Del. April 13, 2018); *Adverio Pharma GmbH et al. v. MSN Laboratories Private Limited et al.*, No. 1:18-cv-00073-LPS, D.I. 18 (D. Del. April 3, 2018), and accordingly this Court has personal jurisdiction over Alembic.

33.   On information and belief, if Alembic's ANDA No. 214195 is approved, Alembic will directly or indirectly manufacture, market, sell, and/or distribute Alembic's ANDA Products within the United States, including in Delaware, consistently with Alembic's practices for the marketing and distribution of other generic pharmaceutical products. On information and belief, Alembic regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. On information and belief, Alembic's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Alembic's ANDA Products will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. On information and belief, each of these activities

9

would have a substantial effect within Delaware and would constitute infringement of the '020 patent in the event that Alembic's ANDA No. 214195 is approved before the '020 patent expires.

34.    On information and belief, Alembic derives substantial revenue from pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Alembic and/or for which APL, Alembic Global, or Alembic Pharma is the named applicant on approved ANDAs. On information and belief, various products for which APL, Alembic Global, or Alembic Pharma is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

10

ME1 32629600v.1

**MSN**

35.     This Court has personal jurisdiction over each of MSN Labs and MSN Pharma.

36.     MSN Labs is subject to personal jurisdiction in Delaware because, among other things, MSN Labs, itself and through its wholly owned subsidiary MSN Pharma, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  On information and belief, MSN Labs, itself and through its subsidiary MSN Pharma, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, MSN Labs is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates MSN Pharma and therefore the activities of MSN Pharma in this jurisdiction are attributed to MSN Labs.

37.     MSN Pharma is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  MSN Pharma is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware.  It therefore has consented to general jurisdiction in Delaware.  In addition, upon information and belief, MSN Pharma develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts

11

business within the State of Delaware related to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

38. On information and belief, MSN knows and intends that following any approval of MSN's ANDA No. 214244, MSN will manufacture and import into the United States MSN's ANDA Products and directly or indirectly market, sell, and distribute MSN's ANDA Products throughout the United States, including in Delaware. On information and belief, following any FDA approval of ANDA No. 214244, MSN knows and intends that MSN's ANDA Products will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

39. On information and belief, MSN Labs and MSN Pharma are agents of each other, and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length, including with respect to the development, regulatory approval, marketing, sale, offer for sale, and distribution of generic pharmaceutical products throughout the United States, including into Delaware, and including with respect to MSN's ANDA Products at issue. On information and belief, MSN Pharma participated in, assisted, and cooperated with MSN Labs in the acts complained of herein.

40. MSN has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

41. On information and belief, MSN, with knowledge of the Hatch-Waxman Act process, directed MSN's Notice Letter (defined below) to, *inter alia*, AstraZeneca

12

Pharmaceuticals LP, to an address in Delaware, and alleged in MSN's Notice Letter that the '020 patent will not be infringed by the commercial manufacture, use or sale of MSN's ANDA Products. On information and belief, MSN knowingly and deliberately challenged the '020 patent knowing that when it did so it was triggering a forty-five day period for Plaintiffs to bring an action for patent infringement under the Hatch-Waxman Act.

42. Because AstraZeneca Pharmaceuticals LP is a limited partnership organized in Delaware, it suffers injury and consequences from MSN's filing of MSN's ANDA No. 214244, challenging the '020 patent in Delaware.

43. MSN has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending MSN's Notice Letter to a Delaware entity, it would be sued in Delaware for patent infringement.

44. MSN Labs and MSN Pharma regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court, *see, e.g.*, *Novartis Pharmaceuticals Corp. v. Dr. Reddy's Laboratories, Inc. et al.*, No. 1:19-cv-02053-LPS, D.I. 27 (D. Del. Jan. 7, 2020); *Vanda Pharmaceuticals Inc. v. MSN Pharmaceuticals Inc. et al.*, No. 1:19-cv-00926-CFC, D.I. 8 (D. Del. May 28, 2019); *AstraZeneca AB et al. v. MSN Pharmaceuticals, Inc.*, No. 1:18-cv-02051-RGA, D.I. 10 (D. Del. Jan. 17, 2019); *Vanda Pharmaceuticals Inc. v. MSN Pharmaceuticals Inc. et al*, No. 1:18-cv-00690-CFC, D.I. 10 (D. Del. June 28, 2018); *H. Lundbeck A/S et al v. MSN Laboratories Private Limited et al*, No. 1:18-cv-00114-LPS, D.I. 15 (D. Del. April 6, 2018), and accordingly this Court has personal jurisdiction over MSN.

13

45.    On information and belief, if ANDA No. 214244 is approved, MSN will directly or indirectly manufacture, market, sell, and/or distribute MSN's ANDA Products within the United States, including in Delaware, consistently with MSN's practices for the marketing and distribution of other generic pharmaceutical products.   On information and belief, MSN regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.   On information and belief, MSN's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.   On information and belief, MSN's ANDA Products will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware.   On information and belief, each of these activities would have a substantial effect within Delaware and would constitute infringement of the '020 patent in the event that MSN's ANDA No. 214244 is approved before the '020 patent expires.

46.    On information and belief, MSN derives substantial revenue from pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by MSN and/or for which MSN Labs or MSN Pharma is the named applicant on approved ANDAs.   On information and belief, various products for which MSN Labs or MSN Pharma is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

ME1 32629600v.1

**Zydus**

47. This Court has personal jurisdiction over each of Cadila and Zydus Pharma.

48. Cadila is subject to personal jurisdiction in Delaware because, among other things, Cadila, itself and through its wholly owned subsidiary Zydus Pharma, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. On information and belief, Cadila, itself and through its subsidiary Zydus Pharma, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware. In addition, Cadila is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Zydus Pharma and therefore the activities of Zydus Pharma in this jurisdiction are attributed to Cadila.

49. Zydus Pharma is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. On information and belief, Zydus Pharma, itself and in concert with Cadila, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

50. On information and belief, Zydus knows and intends that following any approval of Zydus's ANDA No. 214263, Zydus will manufacture and import into the United

15

ME1 32629600v.1

States Zydus's ANDA Products and directly or indirectly market, sell, and distribute Zydus's ANDA Products throughout the United States, including in Delaware. On information and belief, following any FDA approval of ANDA No. 214263, Zydus knows and intends that Zydus's ANDA Products will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

51.     On information and belief, Cadila and Zydus Pharma are agents of each other, and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length, including with respect to the development, regulatory approval, marketing, sale, offer for sale, and distribution of generic pharmaceutical products throughout the United States, including into Delaware, and including with respect to Zydus's ANDA Products at issue.  On information and belief, Zydus Pharma participated in, assisted, and cooperated with Cadila in the acts complained of herein.

52.     Zydus has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

53.     On information and belief, Zydus, with knowledge of the Hatch-Waxman Act process, directed Zydus's Notice Letter (defined below) to, *inter alia*, AstraZeneca Pharmaceuticals LP, to an address in Delaware, and alleged in Zydus's Notice Letter that the '020 patent will not be infringed by the commercial manufacture, use or sale of Zydus's ANDA Products.  On information and belief, Zydus knowingly and deliberately challenged the '020

16

ME1 32629600v.1

patent knowing that when it did so it was triggering a forty-five day period for Plaintiffs to bring an action for patent infringement under the Hatch-Waxman Act.

54.     Because AstraZeneca Pharmaceuticals LP is a limited partnership organized in Delaware, it suffers injury and consequences from Zydus's filing of Zydus's ANDA No. 214263, challenging the '020 patent in Delaware.

55.     Zydus Pharma has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Zydus's Notice Letter to a Delaware entity, it would be sued in Delaware for patent infringement.

56.     Cadila and Zydus Pharma regularly engage in patent litigation concerning FDA-approved branded drug products in this district, do not contest personal jurisdiction in this district, and have availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this Court, *see, e.g.*, *Currax Pharmaceuticals LLC v. Zydus Pharmaceuticals (USA) Inc. et al.*, No. 19-1569-RGA, D.I. 11 (D. Del. Jan. 17, 2020); *Boehringer Ingelheim Pharmaceuticals Inc. et al. v. Zydus Pharmaceuticals (USA) Inc. et al.*, No. 19-1501-CFC, D.I. 9 (D. Del. Sep. 4, 2019); *Merck Sharp & Dohme Corp. v. Zydus Pharmaceuticals (USA) Inc.*, No. 19-314-RGA, D.I. 11 (D. Del. Mar. 18, 2019); *Astrazeneca AB v. Zydus Pharms. (USA) Inc.*, No. 18-664-RGA, D.I. 9 (D. Del. June 22, 2018); *Biogen Int'l GmbH v. Zydus Pharms. (USA) Inc.*, No. 18-623-LPS, D.I. 8 (D. Del. June 1, 2018); *H. Lundbeck A/S v. Zydus Pharms. (USA) Inc.*, No. 18-150-LPS, D.I. 13 (D. Del. Apr. 2, 2018); *Millennium Pharms., Inc. v. Zydus Pharms. (USA) Inc.*, No. 17-423-CFC, D.I. 9 (D. Del. May 24, 2017), and accordingly this Court has personal jurisdiction over Zydus.

ME1 32629600v.1

57.     On information and belief, if ANDA No. 214263 is approved, Zydus will directly or indirectly manufacture, market, sell, and/or distribute Zydus's ANDA Products within the United States, including in Delaware, consistently with Zydus's practices for the marketing and distribution of other generic pharmaceutical products.  On information and belief, Zydus regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware.   On information and belief, Zydus's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware.  On information and belief, Zydus's ANDA Products will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware.  On information and belief, each of these activities would have a substantial effect within Delaware and would constitute infringement of the '020 patent in the event that Zydus's ANDA No. 214263 is approved before the '020 patent expires.

58.     On information and belief, Zydus derives substantial revenue from pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Zydus and/or for which Cadila or Zydus Pharma is the named applicant on approved ANDAs.  On information and belief, various products for which Cadila or Zydus Pharma is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

## VENUE

### Alembic

59.    Venue is proper in this district for APL pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* APL is a corporation organized and existing under the laws of India and is subject to personal jurisdiction in this judicial district.

60.    Venue is proper in this district for Alembic Global pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Alembic Global is a corporation organized and existing under the laws of Switzerland and is subject to personal jurisdiction in this judicial district.

61.    Venue is proper in this district for Alembic Pharma pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Alembic Pharma is a corporation organized and existing under the laws of the State of Delaware and is subject to personal jurisdiction in this judicial district.

### MSN

62.    Venue is proper in this district for MSN Lab pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* MSN Labs is a private limited company organized and existing under the laws of India and is subject to personal jurisdiction in this judicial district.

63.    Venue is proper in this district for MSN Pharma pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, MSN Pharma is a corporation organized and existing under the laws of the State of Delaware and is subject to personal jurisdiction in this judicial district.

19

**Zydus**

64.     Venue is proper in this district for Cadila pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia,* Cadila is a corporation organized and existing under the laws of India and is subject to personal jurisdiction in this judicial district.

65.     Venue is proper in this district as to Zydus Pharma under 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, Zydus Pharma is subject to personal jurisdiction in this judicial district, has previously consented to venue in this judicial district, and on information and belief is subject to venue in this judicial district and/or will consent to venue for the purpose of this case.

66.     On information and belief, Cadila and Zydus Pharma are part of a broader network of affiliated entities sometimes called the Zydus group. On information and belief, entities affiliated with the Zydus group reside and/or maintain a regular and established place of business within Delaware. Those entities include Zydus Healthcare (USA) LLC ("Zydus Healthcare")—which, on information and belief, is a limited liability company organized under the laws of Delaware—and Zydus Holding Inc. ("Zydus Holding")—which, on information and belief, is a corporation formed under Delaware law. On information and belief, each of Zydus Healthcare and Zydus Holding is a wholly owned subsidiary of Cadila and is controlled and dominated by Cadila.

67.     On information and belief, the Zydus corporate family operates as a single, integrated business. On information and belief, Zydus Pharma, Cadila, Zydus Healthcare, and Zydus Holding are agents of each other, and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length, including with respect to the development, regulatory approval, marketing, sale, offer for sale,

20

and distribution of generic pharmaceutical products throughout the United States, including into Delaware, and including with respect to Zydus's ANDA Products at issue.

68.     On information and belief, Cadila maintains the website https://zyduscadila.com/. According to that website, "Zydus Cadila . . . is a fully integrated, global healthcare provider." (https://zyduscadila.com/company.) The website discusses "Zydus['s] . . . rich history and lineage," noting that, "[i]n 1995, the group was restructured and thus was formed Cadila Healthcare under the aegis of the Zydus group." On information and belief, Zydus entities often share directors and/or officers. For example, according to Cadila's 2018-19 Annual Report (available at https://zyduscadila.com/public/pdf/financial/annual/Cadila_Delux.pdf), Mr. Pankaj R. Patel serves as chairman of Cadila's Board of Directors, and Dr. Sharvil P. Patel serves as Cadila's Managing Director. On information and belief, both men have served as directors of Zydus Pharma as well.

## FACTUAL BACKGROUND

69.     Plaintiffs incorporate each of the preceding paragraphs 1–68 as if fully set forth herein.

70.     The '020 patent, entitled "Pharmaceutical Compositions Comprising AZD9291," (Exhibit A hereto), was duly and legally issued on January 22, 2019, to AstraZeneca AB.

71.     As set forth in greater detail in the '020 patent, the claims of the '020 patent, incorporated by reference herein, cover pharmaceutical compositions comprising osimertinib mesylate and methods of using them.

72.     AstraZeneca AB is the assignee of the '020 patent.

21

ME1 32629600v.1

73.     AstraZeneca Pharmaceuticals LP is the holder of New Drug Application No. 208065 for Tagrisso® (osimertinib mesylate), which has been approved by the FDA. Tagrisso® is a kinase inhibitor indicated for (i) "the first-line treatment of patients with metastatic NSCLC whose tumors have epidermal growth factor receptor (EGFR) exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test"; and (ii) "the treatment of patients with metastatic EGFR T790M mutation-positive NSCLC, as detected by an FDA-approved test, whose disease has progressed on or after EGFR TKI therapy."  Tagrisso® is for oral use and is available as tablets in 40 mg and 80 mg dosage strengths.

74.     Pursuant to 21 U.S.C. § 355, the '020 patent has been listed in connection with Tagrisso® in the FDA's publication, *Approved Drug Products with Therapeutic Equivalence Evaluations*, which is referred to as the "Orange Book."

75.     AstraZeneca will be substantially and irreparably damaged by infringement of the '020 patent.

## COUNT I – ALEMBIC'S INFRINGEMENT OF THE '020 PATENT UNDER 35 U.S.C. § 271(e)(2)(A)

76.     Plaintiffs incorporate each of the preceding paragraphs 1–75 as if fully set forth herein.

77.     By letter dated December 30, 2019, Alembic notified Plaintiffs that it had submitted to the FDA ANDA No. 214195, seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of Alembic's ANDA Products prior to the expiration of the '020 patent ("Alembic's Notice Letter").  On information and belief, the purpose of the submission of ANDA No. 214195 was to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Alembic's ANDA Products prior to the expiration of the '020 patent.

22

78.    In Alembic's Notice Letter, Alembic also notified Plaintiffs that, as part of ANDA No. 214195, Alembic had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the '020 patent.    On information and belief, Alembic submitted ANDA No. 214195 to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the '020 patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Alembic's ANDA Products.

79.    According to information in Alembic's Notice Letter, Alembic's ANDA Products are a generic version of Tagrisso® tablets.

80.    According to the FDA website, APL is the holder of Drug Master File No. 33409 for osimertinib mesylate.

81.    On information and belief, Alembic's ANDA Products are not publicly available, nor is ANDA No. 214195 accessible to the public.

82.    In Alembic's Notice Letter, Alembic included an Offer of Confidential Access to portions of ANDA No. 214195.    The offer, however, was subject to various unreasonably restrictive conditions.

83.    On January 20, 2020, counsel for Plaintiffs sent a letter to counsel for Alembic attempting to negotiate access to Alembic's ANDA and other materials, proposing that the parties use a protective order that was based on a protective order that had previously been used in Hatch-Waxman litigation.

84.    On January 21, 2020, counsel for Alembic emailed counsel for Plaintiffs to state that they would follow up with their client concerning Plaintiffs' correspondence.  As of

ME1 32629600v.1

the filing of this Complaint, Plaintiffs have not received a further response from counsel for Alembic.

85.    Plaintiffs are filing this Complaint within forty-five days of receipt of Alembic's Notice Letter.

86.    According to Alembic's Notice Letter, Alembic's ANDA Products contain osimertinib mesylate.    On information and belief, Alembic's ANDA Products contain osimertinib mesylate in an amount that literally satisfies the requirements of claim 1 of the '020 patent.

87.    According to information in Alembic's Notice Letter, Alembic's ANDA Products are in the form of oral tablets for pharmaceutical use.  Accordingly, Alembic's ANDA Products are pharmaceutical tablets.

88.    On information and belief, Alembic's ANDA Products contain inactive ingredients that satisfy, literally and/or by equivalents, the limitations of claim 1 concerning materials other than osimertinib mesylate that are contained in the claimed pharmaceutical composition.  Alembic's Notice Letter did not contest that Alembic's ANDA Products literally satisfy various limitations of claim 1 of the '020 patent.

89.    On information and belief, Alembic's ANDA Products are covered literally and/or under the doctrine of equivalents by one or more claims of the '020 patent, including at least claims 1 and 9.

90.    On information and belief, the proposed product labeling for Alembic's ANDA Products will include at least one of the same indications as set forth in the labeling for Tagrisso® tablets, and thus direct, encourage, and induce a method of treating cancer in a patient in need thereof, which method comprises the oral administration of an effective number of

24

tablets that are Alembic's ANDA Products to the patient, wherein the cancer is non-small cell lung cancer.

91. In Alembic's Notice Letter, Alembic did not contest the validity of any claim of the '020 patent.

92. Alembic has now, and has had since at least before submitting ANDA No. 214195, knowledge of the '020 patent.

93. Alembic's submission of ANDA No. 214195 for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Alembic's ANDA Products before the expiration of the '020 patent was an act of infringement of that patent under 35 U.S.C. § 271(e)(2)(A).

94. On information and belief, Alembic will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Alembic's ANDA Products immediately and imminently upon approval of ANDA No. 214195 and expiration of any other Orange Book-listed patent or relevant exclusivity for Tagrisso®.

95. On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Alembic's ANDA Products would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '020 patent, including at least claims 1 and 9.

96. On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Alembic's ANDA Products in accordance with, and as directed by Alembic's proposed product labeling for Alembic's ANDA Products, would infringe one or more claims of the '020 patent, including at least claims 1 and 9.

25

ME1 32629600v.1

97.     On information and belief, Alembic plans and intends to, and will, actively induce infringement of the '020 patent when ANDA No. 214195 is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

98.     On information and belief, the foregoing actions by Alembic constitute and/or will constitute infringement of the '020 patent and active inducement of infringement of the '020 patent.

99.     Unless Alembic is enjoined from infringing the '020 patent and actively inducing infringement of the '020 patent, Plaintiffs will suffer irreparable injury.  Plaintiffs have no adequate remedy at law.

**COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT BY ALEMBIC OF THE '020 PATENT**

100.    Plaintiffs incorporate each of the preceding paragraphs 1–99 as if fully set forth herein.

101.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Plaintiffs on the one hand and Alembic on the other regarding Alembic's liability for infringement and active inducement of infringement of the '020 patent.

102.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Alembic's ANDA Products will infringe and induce the infringement of the '020 patent.

26

ME1 32629600v.1

## COUNT III – MSN'S INFRINGEMENT OF THE '020 PATENT UNDER
## 35 U.S.C. § 271(e)(2)(A)

103.    Plaintiffs incorporate each of the preceding paragraphs 1–102 as if fully set forth herein.

104.    By letter dated January 3, 2020, MSN notified, *inter alia*, Plaintiffs that it had submitted to the FDA ANDA No. 214244, seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of MSN's ANDA Products prior to the expiration of the '020 patent  ("MSN's Notice Letter").  On information and belief, the purpose of the submission of ANDA No. 214244 was to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of MSN's ANDA Products prior to the expiration of the '020 patent.

105.    In MSN's Notice Letter, MSN also notified Plaintiffs that, as part of ANDA No. 214244, MSN had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the '020 patent.  On information and belief, MSN submitted ANDA No. 214244 to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the '020 patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of MSN's ANDA Products.

106.    According to information in MSN's Notice Letter, MSN's ANDA Products are a generic version of Tagrisso® tablets.

107.    According to the FDA website, MSN Labs is the holder of Drug Master File No. 32143 for osimertinib mesylate.

108.    On information and belief, MSN's ANDA Products are not publicly available, nor is ANDA No. 214244 accessible to the public.

27

109.     In MSN's Notice Letter, MSN included an Offer of Confidential Access to portions of ANDA No. 214244.  The offer, however, was subject to various unreasonably restrictive conditions.

110.     On January 20, 2020, counsel for Plaintiffs sent a letter to counsel for MSN attempting to negotiate access to MSN's ANDA and other materials, proposing that the parties use a protective order that was based on a protective order that had previously been used in Hatch-Waxman litigation.

111.     On January 28, 2020, counsel for MSN responded to Plaintiffs' letter with a revised offer of confidential access to MSN's ANDA, although not to other materials requested by Plaintiffs.  The revised offer was subject to various unreasonably restrictive conditions.

112.     On January 29, 2020, counsel for Plaintiffs and counsel for MSN held a phone call to discuss MSN's revised offer of confidential access.  On January 31, 2020 counsel for Plaintiffs responded in writing to MSN's revised offer of confidential access, noting that the offer was still unreasonably restrictive and failed to provide materials beyond MSN's ANDA. Counsel for Plaintiffs referred again to the proposal set forth in Plaintiffs' January 20, 2020 correspondence to MSN.

113.     On February 4, 2020, counsel for MSN responded to Plaintiffs' January 31, 2020 correspondence via email.  In that email, MSN refused to remove various unreasonably restrictive conditions from their offer of confidential access and refused to provide Plaintiffs with any materials beyond MSN's ANDA.

114.     On Februrary 6, 2020, counsel for Plaintiffs responded to MSN's February 4, 2020 email, noting, *inter alia*, that MSN's offer of confidential access still contained

28

unreasonable restrictions. As of the filing of this Complaint, MSN had refused to agree to reasonable confidentiality restrictions.

115. Plaintiffs are filing this Complaint within forty-five days of receipt of MSN's Notice Letter.

116. According to MSN's Notice Letter, MSN's ANDA Products contain osimertinib mesylate. On information and belief, MSN's ANDA Products contain osimertinib mesylate in an amount that literally satisfies the requirements of claim 1 of the '020 patent.

117. According to information in MSN's Notice Letter, MSN's ANDA Products are in the form of oral tablets for pharmaceutical use. Accordingly, MSN's ANDA Products are pharmaceutical tablets.

118. On information and belief, MSN's ANDA Products contain inactive ingredients that satisfy, literally and/or by equivalents, the limitations of claim 1 concerning materials other than osimertinib mesylate that are contained in the claimed pharmaceutical composition. MSN's Notice Letter did not contest that MSN's ANDA Products literally satisfy various limitations of claim 1 of the '020 patent.

119. On information and belief, MSN's ANDA Products are covered literally and/or under the doctrine of equivalents by one or more claims of the '020 patent, including at least claims 1 and 9.

120. On information and belief, the proposed product labeling for MSN's ANDA Products will include at least one of the same indications as set forth in the labeling for Tagrisso® tablets, and thus direct, encourage, and induce a method of treating cancer in a patient in need thereof, which method comprises the oral administration of an effective number of

29

tablets that are MSN's ANDA Products to the patient, wherein the cancer is non-small cell lung cancer.

121. In MSN's Notice Letter, MSN did not contest the validity of any claim of the '020 patent.

122. MSN has now, and has had since at least before submitting ANDA No. 214244, knowledge of the '020 patent.

123. MSN's submission of ANDA No. 214244 for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of MSN's ANDA Products before the expiration of the '020 patent was an act of infringement of that patent under 35 U.S.C. § 271(e)(2)(A).

124. On information and belief, MSN will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of MSN's ANDA Products immediately and imminently upon approval of ANDA No. 214244 and expiration of any other Orange Book-listed patent or relevant exclusivity for Tagrisso®.

125. On information and belief, the manufacture, use, sale, offer for sale, and/or importation of MSN's ANDA Products would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '020 patent, including at least claims 1 and 9.

126. On information and belief, the manufacture, use, sale, offer for sale, and/or importation of MSN's ANDA Products in accordance with, and as directed by MSN's proposed product labeling for MSN's ANDA Products, would infringe one or more claims of the '020 patent, including at least claims 1 and 9.

ME1 32629600v.1

127.    On information and belief, MSN plans and intends to, and will, actively induce infringement of the '020 patent when ANDA No. 214244 is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

128.    On information and belief, the foregoing actions by MSN constitute and/or will constitute infringement of the '020 patent and active inducement of infringement of the '020 patent.

129.    Unless MSN is enjoined from infringing the '020 patent and actively inducing infringement of the '020 patent, Plaintiffs will suffer irreparable injury.  Plaintiffs have no adequate remedy at law.

## COUNT IV – DECLARATORY JUDGMENT OF INFRINGEMENT BY MSN OF THE '020 PATENT

130.    Plaintiffs incorporate each of the preceding paragraphs 1–129 as if fully set forth herein.

131.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Plaintiffs on the one hand and MSN on the other regarding MSN's liability for infringement and active inducement of infringement of the '020 patent.

132.    The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of MSN's ANDA Products will infringe and induce the infringement of the '020 patent.

31

## COUNT V – ZYDUS'S INFRINGEMENT OF THE '020 PATENT UNDER 35 U.S.C. § 271(e)(2)(A)

133.    Plaintiffs incorporate each of the preceding paragraphs 1–132 as if fully set forth herein.

134.    By letter dated January 14, 2020, Zydus notified Plaintiffs that it had submitted to the FDA ANDA No. 214263, seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of Zydus's ANDA Products prior to the expiration of the '020 patent ("Zydus's Notice Letter").  On information and belief, the purpose of the submission of ANDA No. 214263 was to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Zydus's ANDA Products prior to the expiration of the '020 patent.

135.    In Zydus's Notice Letter, Zydus also notified Plaintiffs that, as part of ANDA No. 214263, Zydus had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the '020 patent.  On information and belief, Zydus submitted ANDA No. 214263 to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the '020 patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Zydus's ANDA Products.

136.    According to information in Zydus's Notice Letter, Zydus's ANDA Products are a generic version of Tagrisso® tablets.

137.    On information and belief, Zydus's ANDA Products are not publicly available, nor is ANDA No. 214263 accessible to the public.

ME1 32629600v.1

138.    In Zydus's Notice Letter, Zydus included an Offer of Confidential Access to portions of ANDA No. 214263.  The offer, however, was subject to various unreasonably restrictive conditions.

139.    On January 24, 2020, counsel for Plaintiffs sent a letter to counsel for Zydus attempting to negotiate access to Zydus's ANDA and other materials, proposing that the parties use a protective order that was based on a protective order that had previously been used in Hatch-Waxman litigation.  As of the filing of this Complaint, Plaintiffs have not received a response.

140.    Plaintiffs are filing this Complaint within forty-five days of receipt of Zydus's Notice Letter.

141.    According to Zydus's Notice Letter, Zydus's ANDA Products contain osimertinib.  On information and belief, the osimertinib in Zydus's ANDA Products is in the form of osimertinib mesylate.  On information and belief, Zydus's ANDA Products contain osimertinib mesylate in an amount that literally satisfies the requirements of claim 1 of the '020 patent.

142.    On information and belief, Zydus's ANDA Products are in the form of oral tablets for pharmaceutical use.  Accordingly, Zydus's ANDA Products are pharmaceutical tablets.

143.    On information and belief, Zydus's ANDA Products contain inactive ingredients that satisfy, literally and/or by equivalents, the limitations of claim 1 concerning materials other than osimertinib mesylate that are contained in the claimed pharmaceutical composition.  Zydus's Notice Letter did not contest that Zydus's ANDA Products literally satisfy various limitations of claim 1 of the '020 patent.

ME1 32629600v.1

144. On information and belief, Zydus's ANDA Products are covered literally and/or under the doctrine of equivalents by one or more claims of the '020 patent, including at least claims 1 and 9.

145. On information and belief, the proposed product labeling for Zydus's ANDA Products will include at least one of the same indications as set forth in the labeling for Tagrisso® tablets, and thus direct, encourage, and induce a method of treating cancer in a patient in need thereof, which method comprises the oral administration of an effective number of tablets that are Zydus's ANDA Products to the patient, wherein the cancer is non-small cell lung cancer.

146. In Zydus's Notice Letter, Zydus did not contest the validity of any claim of the '020 patent.

147. Zydus has now, and has had since at least before submitting ANDA No. 214263, knowledge of the '020 patent.

148. Zydus's submission of ANDA No. 214263 for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zydus's ANDA Products before the expiration of the '020 patent was an act of infringement of that patent under 35 U.S.C. § 271(e)(2)(A).

149. On information and belief, Zydus will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Zydus's ANDA Products immediately and imminently upon approval of ANDA No. 214263 and expiration of any other Orange Book-listed patent or relevant exclusivity for Tagrisso®.

ME1 32629600v.1

150.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Zydus's ANDA Products would infringe, literally and/or under the doctrine of equivalents, one or more claims of the '020 patent, including at least claims 1 and 9.

151.    On information and belief, the manufacture, use, sale, offer for sale, and/or importation of Zydus's ANDA Products in accordance with, and as directed by Zydus's proposed product labeling for Zydus's ANDA Products, would infringe one or more claims of the '020 patent, including at least claims 1 and 9.

152.    On information and belief, Zydus plans and intends to, and will, actively induce infringement of the '020 patent when ANDA No. 214263 is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

153.    On information and belief, the foregoing actions by Zydus constitute and/or will constitute infringement of the '020 patent and active inducement of infringement of the '020 patent.

154.    Unless Zydus is enjoined from infringing the '020 patent and actively inducing infringement of the '020 patent, Plaintiffs will suffer irreparable injury.  Plaintiffs have no adequate remedy at law.

## COUNT VI – DECLARATORY JUDGMENT OF INFRINGEMENT BY ZYDUS OF THE '020 PATENT

155.    Plaintiffs incorporate each of the preceding paragraphs 1–154 as if fully set forth herein.

156.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Plaintiffs on the one hand and Zydus on the other regarding Zydus's liability for infringement and active inducement of infringement of the '020 patent.

35

157. The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Zydus's ANDA Products will infringe and induce the infringement of the '020 patent.

WHEREFORE, Plaintiffs request the following relief:

(a) A judgment that the '020 patent has been infringed under 35 U.S.C. § 271(e)(2) by Alembic's submission to the FDA of ANDA No. 214195;

(b) A judgment that the '020 patent has been infringed under 35 U.S.C. § 271(e)(2) by MSN's submission to the FDA of ANDA No. 214244;

(c) A judgment that the '020 patent has been infringed under 35 U.S.C. § 271(e)(2) by Zydus's submission to the FDA of ANDA No. 214263;

(d) A judgment ordering that the effective date of any FDA approval of commercial manufacture, use, or sale of Alembic's ANDA Products be not earlier than the expiration of the '020 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(e) A judgment ordering that the effective date of any FDA approval of commercial manufacture, use, or sale of MSN's ANDA Products be not earlier than the expiration of the '020 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(f) A judgment ordering that the effective date of any FDA approval of commercial manufacture, use, or sale of Zydus's ANDA Products be not earlier than the expiration of the '020 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

36

(g)    A preliminary and permanent injunction enjoining Alembic, and all persons acting in concert with Alembic, from the commercial manufacture, use, sale, offer for sale, or importation into the United States of Alembic's ANDA Products prior to the expiration of the '020 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(h)    A preliminary and permanent injunction enjoining MSN, and all persons acting in concert with MSN, from the commercial manufacture, use, sale, offer for sale, or importation into the United States of MSN's ANDA Products prior to the expiration of the '020 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(i)    A preliminary and permanent injunction enjoining Zydus, and all persons acting in concert with Zydus, from the commercial manufacture, use, sale, offer for sale, or importation into the United States of Zydus's ANDA Products prior to the expiration of the '020 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(j)    A judgment declaring that the commercial manufacture, use, sale, offer for sale or importation of Alembic's ANDA Products prior to the expiration of the '020 patent will infringe and induce the infringement of the '020 patent;

(k)    A judgment declaring that the commercial manufacture, use, sale, offer for sale or importation of MSN's ANDA Products prior to the expiration of the '020 patent will infringe and induce the infringement of the '020 patent;

(l)    A judgment declaring that the commercial manufacture, use, sale, offer for sale or importation of Zydus's ANDA Products prior to the expiration of the '020 patent will infringe and induce the infringement of the '020 patent;

(m)    A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

ME1 32629600v.1

(n)    Costs and expenses in this action; and

(o)    Such further and other relief as this Court may deem just and proper.


Respectfully submitted,


Dated:  February 11, 2020                    MCCARTER & ENGLISH LLP


                                             /s/ Daniel M. Silver
OF COUNSEL:                                  Michael P. Kelly (#2295)
Jessamyn S. Berniker                         Daniel M. Silver (#4758)
Dov P. Grossman                              Alexandra M. Joyce (#6423)
Vidya A. Mirmira                             Renaissance Centre
Christopher A. Yeager                        405 N. King Street, 8th Floor
Jingyuan Luo                                 Wilmington, Delaware 19801
Sumeet P. Dang                               (302) 984-6300
WILLIAMS & CONNOLLY LLP                      mkelly@mccarter.com
725 Twelfth Street, N.W.                     dsilver@mccarter.com
Washington, DC  20005                        ajoyce@mccarter.com
(202) 434-5000
(202) 434-5029 (Facsimile)                   *Attorneys for Plaintiffs AstraZeneca AB and*
                                             *AstraZeneca Pharmaceuticals LP*

ME1 32629600v.1